# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>MUNEHIRO YAMADA,<br><br>       Debtor. | Case No. 11-02112<br>Chapter 7 |
| SHIGEZO HAWAII, INC.,<br><br>       Plaintiff,<br><br>vs.<br><br>SOY TO THE WORLD INCORPORATED, et al.,<br><br>       Defendants. | Adv. Pro. No. 11-90075<br><br><br><br>Re: Docket No. 1 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The trial of this adversary proceeding was held on May 30, June 12-14, 19 and 25, 2012. David Squeri, Esq., and Junsuke Otsuka, Esq., represented plaintiff, and Craig Furusho, Esq., represented defendant Munehiro Yamada. Based on the evidence, I make the following

## FINDINGS OF FACT

1. Munehiro Yamada, the debtor in this chapter 7 proceeding, is a tofu artisan. He controlled INOC Corporation ("INOC"), which did business under the

tradename "Soy to the World." Soy to the World manufactured and sold tofu.

2. Soy to the World was apparently never profitable. Mr. Yamada sustained the business by obtaining loans and investments.

3. In 2006, Mr. Yamada met Kazuhiro Maruko, who is the president of Shigezo Hawaii, Inc. ("Shigezo"). Shigezo wanted to open a chain of Japanese restaurants in Hawaii. Mr. Maruko and Mr. Yamada talked about the possibility of Shigezo making a loan to or an investment in Soy to the World.

4. Mr. Yamada provided to Mr. Maruko all of the information about Soy to the World that Mr. Maruko requested. He provided most of that information orally. Mr. Yamada did not make any false statements and did not fail to disclose any facts which would render his statements misleading or which he otherwise owed a duty to disclose. Mr. Yamada had no intent to deceive Shigezo. Mr. Maruko, who is a professional investment analyst in Japan, relied exclusively on his own valuation of the Soy to the World business and his own analysis in deciding to pursue a transaction with Soy to the World.

5. Mr. Maruko outlined the basic terms of a transaction between Shigezo and INOC in an email to Mr. Yamada (trial ex. P-46). The transaction was to be structured as a "lease of operating rights," under which Shigezo would operate the Soy to the World business for six months (January through June 2007), collect all

U.S. Bankruptcy Court - Hawaii   #11-90075   Dkt # 133   Filed   08/06/12   Page 2 of 15

revenues and pay all expenses of the business (including Mr. Yamada's salary of $3,000 per month), and pay INOC a monthly fee of $1,000. Shigezo would provide a "security deposit" of $50,000, repayable at the end of the term of the agreement. The term of the contract could be extended on mutual agreement, and "[d]uring the contractual term, INOC and Shigezo shall enter into discussions toward forming a comprehensive alliance." The lease would be documented in a formal agreement to be prepared by Shigezo's counsel.

6. Mr. Yamada responded using a Japanese word that can mean either "I understand" or "I accept." Based on the dictionary definition of the term, the information provided by the trial interpreter, and the entire record, I find that Mr. Yamada meant "I understand," and that he did not intend to cause INOC to enter into a binding agreement until he reviewed and approved the formal documents.

7. Mr. Yamada told Mr. Maruko that Soy to the World needed the money immediately, before the formal documents could be completed, because it was delinquent on its expenses, including rent, and was facing eviction. These statements were truthful. In late December 2006, Shigezo transmitted $50,000 to INOC before the formal agreements were drafted and signed.

8. Mr. Yamada soon spent the $50,000 on rent and other expenses of Soy to the World, as he had told Mr. Maruko he meant to do. Shigezo did not

3

prove that the money was used for any inappropriate or unauthorized purpose.

9.  Shigezo and INOC failed to reach agreement. The reasons for this are not entirely clear, partly because the testimony was in conflict, but also because Shigezo did not offer into evidence the draft documents which its attorney prepared and which it apparently transmitted to Mr. Yamada. It occurred at least in part because Mr. Yamada thought he should obtain the approval of INOC's prior investors and they were not amenable to the transaction, realizing that the transaction would have squeezed them out of the business for no consideration. Mr. Maruko knew that there were other investors and had been in contact with at least one of them. Shigezo failed to prove that Mr. Yamada concealed the investors from it or wrongfully failed to tell Shigezo that he thought the investors' approval was required.

10. When he solicited and obtained Shigezo's money, Mr. Yamada intended to negotiate in good faith with Shigezo to reach a complete, binding agreement, and to carry out that agreement once made. He complied (or caused INOC to comply) with the terms of the email outline for about two months: INOC assigned the Soy to the World trade name to Shigezo; and Mr. Yamada deposited the business' receipts in an account controlled by Shigezo. He stopped depositing the receipts in that account and began again to deposit them in INOC's account

4

only after he concluded, in good faith, that the parties were not going to reach agreement. INOC did not repay the $50,000 "security deposit."

11. On May 29, 2007, Shigezo sued INOC and Mr. Yamada in state court for the security deposit and other relief. On October 7, 2008, the state court entered judgment against INOC and Mr. Yamada in the amount of $141,865.40. The judgment was entered by default as a discovery sanction. The record of this adversary proceeding does not include any findings of fact by the state court. The judgment recites that it is premised on claims for fraud, breach of contract, unjust enrichment, and other claims. The state court did not grant Shigezo's request for punitive damages.

12. After Shigezo filed its suit, and continuing after Shigezo took the judgment, Mr. Yamada took steps which he intended to hinder, delay, or defeat Shigezo's attempts to collect its claims. He caused his then wife, Emi Yamada, to form a series of companies to conduct a tofu business. He moved the tofu machine to a business location owned by an acquaintance and took steps to block Shigezo's attempt to levy on the machine.

13. Shigezo failed to prove the value of the tofu machine at the time of these actions. The only evidence comes from an inventory sheet which Mr. Yamada provided to Mr. Maruko before Shigezo advanced the money to INOC.

5

The inventory sheet said that INOC had paid $40,000 for the machine. There was no evidence of the current value of the machine.

14. Shigezo also failed to offer persuasive evidence of the then current value of INOC's tradename, customer list, and other assets. Because the Soy to the World business has never been profitable, there is no reason to believe that those assets have any particular value.

15. In 2008, Shigezo filed another complaint against INOC and Mr. Yamada, adding Mrs. Yamada and others as defendants. The complaint asserts fraudulent transfer and related claims. No judgment has been entered in that case.

16. Mr. Yamada filed a chapter 7 petition in this court on July 31, 2011.

17. Shigezo timely removed its second state court case to this court and filed a supplemental complaint to assert that its claims against Mr. Yamada were not dischargeable under sections 523(a)(2)(A), (a)(4), and (a)(6) of the Bankruptcy Code.

18. Shortly before the trial of this adversary proceeding, I ruled sua sponte that I would remand all of the claims in the removed action except for the claims in the supplemental complaint concerning the dischargeability of Mr. Yamada's debt to Shigezo. All of the other claims were asserted by and against nondebtor parties and could not have any effect on the bankruptcy estate. I probably lack subject

6

matter jurisdiction over those claims and, in any event, I could not enter a final judgment on those claims under Stern v. Marshall, 131 S. Ct. 2594 (2011).

Based on these findings of fact, I make the following

**CONCLUSIONS OF LAW**

1. The court has jurisdiction over the supplemental complaint in this adversary proceeding and has power to enter a final judgment. Venue is proper.

2. Shigezo contends that its claims against Mr. Yamada are not dischargeable under section 523(a)(2)(A), (a)(4), and (a)(6) of the Bankruptcy Code.

3. Exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992); see also National Union Fire Insurance Co. of Pittsburgh v. Bonnanzio (In re Bonnanzio), 91 F.3d 296, 300 (2d Cir. 1996); Meyer v. Rigdon, 36 F.3d 1375, 1385 (7th Cir. 1994).

4. The plaintiff seeking to establish an exception to the discharge bears the burden of proof. Fed. R. Bankr. P. 4005; see also In re Niles, 106 F.3d 1456, 1464-65 (9th Cir. 1997). The plaintiff must meet this burden by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286 (1991); Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th

U.S. Bankruptcy Court - Hawaii    #11-90075    Dkt # 133    Filed 08/06/12    Page 7 of 15

Cir. 2000).

A. **Fraud (Section 523(a)(2)(A))**

5. Section 523(a)(2)(A) of the Bankruptcy Code provides:

A discharge under . . . this title does not discharge an individual debtor from any debt -

\* \* \*

>    (2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by -
>
>    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

11 U.S.C. § 523(a); see also Cohen v. de la Cruz, 523 U.S. 213, 218-22 (1998).

6. To prevail on a claim under § 523(a)(2)(A), a creditor must demonstrate five elements:

>    (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor;
>
>    (2) knowledge of the falsity or deceptiveness of his statement or conduct;
>
>    (3) an intent to deceive;
>
>    (4) justifiable reliance by the creditor on the debtor's statement or conduct; and
>
>    (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

8

In re Weinberg, 410 B.R. 19, 35 (B.A.P. 9th Cir. 2009); In re Slyman, 234 F.3d at 1085; Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi), 104 F.3d 1122, 1125 (9th Cir. 1996).

7. When INOC obtained funds from Shigezo, Mr. Yamada did not make any misrepresentations or fraudulent omissions, and he did not engage in any deceptive conduct. He had no intent to deceive Shigezo. Shigezo did not rely on any false or misleading statements or conduct of Mr. Yamada.

8. "[A] promise made with a positive intent not to perform or without a present intent to perform satisfies § 523(a)(2)(A)." In re Rubin, 875 F.2d 755, 759 (9th Cir. 1989) (internal quotations omitted). In addition, "where the promisor knew or should have known of his prospective inability to perform, the promise can be found to be fraudulent." In re Barrack, 217 B.R. 598, 606 (B.A.P. 9th Cir. 1998) (internal quotations omitted). A complete failure to take steps towards carrying out a promise can support an inference that the promisor never intended to perform. In re Barnette, 281 B.R. 869, 876 (Bankr. W.D. Pa. 2002).

9. When Shigezo transmitted the money to INOC, Mr. Yamada intended that INOC would negotiate a final agreement with Shigezo and carry out its obligations under that agreement.

10. Shigezo has failed to establish a claim under section 523(a)(2)(A).

9

## B. Fiduciary Misconduct (Section 523(a)(4))

11. Section 523(a)(4) prevents discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).

12. "Defalcation" as used in section 523(a)(4) means a misappropriation of trust funds or money held in any fiduciary capacity, or the failure to account properly for such funds. In re Hemmeter, 242 F.3d 1186, 1190 (9th Cir. 2001); In re Lewis, 97 F.3d 1182 (9th Cir. 1996); In re Baird, 114 B.R. 198 (B.A.P. 9th Cir. 1990). "[T]he essence of defalcation in the context of § 524(a)(4) is a failure to produce funds entrusted to a fiduciary." Id. Intent to defraud is not required; defalcation includes innocent as well as intentional failures. Id.; see also F.D.I.C. v. Jackson, 133 F.3d 694 (9th Cir. 1998) ("[D]efalcation, at least for the purposes of nondischargeability under Section 523(a)(4), includes any behavior by a fiduciary, including innocent, negligent and intentional defaults of fiduciary duty . . . .")

13. Federal law defines the phrase "fiduciary capacity" as used in section 523(a)(4). Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1185 (9th Cir. 1996). The term "fiduciary" as used in section 523(a)(4) has a narrow meaning. Only relationships arising from express or technical trusts qualify as fiduciary relationships under section 523(a)(4). Id.

U.S. Bankruptcy Court - Hawaii   #11-90075   Dkt # 133   Filed  08/06/12   Page 10 of 15

> The meaning of 'fiduciary capacity' under section 523(a)(4) is a question of federal law, which has consistently limited this term to express or technical trust relationships. The broad general definition of a fiduciary relationship--one involving confidence, trust and good faith--is inapplicable in the dischargeability context. The debt alleged to be nondischargeable must arise from a breach of trust obligations imposed by law, separate and distinct from any breach of contract. In addition, the requisite trust relationship must exist prior to and without reference to the act of wrongdoing. This requirement eliminates constructive, resulting or implied trusts.

In re Baird, 114 B.R. at 198. While the definition of "fiduciary capacity" under section 523(a)(4) is governed by federal law, courts must look to state law to determine whether the requisite trust relationship exists. In re Cantrell, 260 B.R. 413, 421 (B.A.P. 9th Cir. 2001); see also Ragsdale v. Haller (In re Haller), 780 F.2d 794, 795 (9th Cir. 1986).

14. Shigezo has not established that Mr. Yamada was a fiduciary within the meaning of section 523(a)(4). Mr. Yamada became an employee of Shigezo in January 2007 under the emailed outline of the tentative agreement. An employee probably owes fiduciary duties to the employer in respect of the property of the business as a matter of state law, but Shigezo cites no authority for the proposition that an employee acts in a "fiduciary capacity" within the narrow meaning of section 523(a)(4). Further, Mr. Yamada was not bound indefinitely by the tentative agreement. His fiduciary capacity terminated when he concluded that INOC and Shigezo would not reach a final agreement.

11

15. In any event, there is no evidence that Mr. Yamada put any of the funds to any use other than the operation of the business. Because Shigezo had tentatively agreed to pay the expenses of the business, Shigezo was not harmed by Mr. Yamada's use of the business' revenues to pay its expenses. Shigezo's only loss would have been any profits of the business, but I have found that there were no profits.

16. Embezzlement involves three elements: "(1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which [it] was entrusted; and (3) circumstances indicating fraud." In re Littleton, 942 F.2d 551, 555 (9th Cir. 1991), quoting In re Hoffman, 70 Bankr. 155, 162 (Bankr. W.D. Ark. 1986). The elements of larceny are the same as embezzlement except that the initial possession of the property was wrongful. Ormsby, 591 F.3d at 1205.

17. Shigezo did not prove that Mr. Yamada used any of the funds of the business other than to pay legitimate business expenses, the purpose for which he was entrusted with those funds. The circumstances do not indicate fraud.

18. Mr. Yamada did not commit fraud or defalcation in a fiduciary capacity, embezzlement, or larceny. Shigezo has not established a claim under section 523(a)(4).

U.S. Bankruptcy Court - Hawaii   #11-90075   Dkt # 133   Filed 08/06/12   Page 12 of 15

### C. Willful and Malicious Injury (Section 523(a)(6))

19. In order to establish "willful and malicious injury" under § 523(a)(6), RDG has the burden of proving both "willful" and "malicious" injury. The malicious injury requirement is separate from the willful injury requirement. Albarran v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008).

20. "A 'willful' injury is a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Id. (quoting Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)). Injury caused by recklessness or negligence does not constitute "willful injury." Geiger, 523 U.S. at 60. The injury itself must be "deliberate or intentional." Id. The willful injury requirement is met when the debtor has a subjective intent to inflict injury or believes the injury is substantially certain to result from the conduct.

21. A "malicious act" is (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. Albarran, 545 F.3d at 706. "Malice may be inferred from the nature of the wrongful act" if it is first established that the act was willful. Ormsby, 591 F.3d at 1207.

22. An "intentional breach of contract cannot give rise to non-dischargeability under 11 U.S.C. §523(a)(6) unless it is accompanied by conduct

13

U.S. Bankruptcy Court - Hawaii   #11-90075   Dkt # 133   Filed 08/06/12   Page 13 of 15

that constitutes a tort under state law." Lockerby v. Sierra, 535 F.3d 1038, 1040 (9th Cir. 2008).

23. Shigezo has not established that Mr. Yamada inflicted "willful and malicious injury" upon it in connection with the formation or performance of the tentative agreement. During this period, Mr. Yamada had no subjective intent to hurt Shigezo and did not engage in any tortious conduct.

24. Under Ninth Circuit law, intentional efforts to delay, hinder, and prevent the enforcement of a an unsecured creditor's claim or judgment do not give rise to a nondischargeable claim under section 523(a)(6). In re Saylor (Quarre v. Saylor), 108 F.3d 219 (9th Cir. 1997).[1] Shigezo had no security interest, lien rights, or other interest in any of the Soy to the World assets at that time. Shigezo had previously terminated the lease of operating rights set forth in the tentative agreement. Therefore, Mr. Yamada's conduct did not damage any property interests of Shigezo. Further, Shigezo failed to prove that those acts inflicted any quantifiable economic or other injury upon it. There is no evidence that the Soy to the World assets had any particular value at or around the time of Shigezo's collection efforts. Accordingly, Shigezo has not established a claim under section

---

[1] In the same year as Saylor, another panel of the Ninth Circuit reached the opposite result, without citing Saylor. Compare In re Bammer (Murray v. Bammer), 131 F.3d 788 (9th Cir. 1997). It is not clear that Bammer is still good law. The Supreme Court impliedly overruled the decision on another ground in Kawaauhau v. Geiger, 523 U.S. 57 (1998).

14

U.S. Bankruptcy Court - Hawaii   #11-90075   Dkt # 133   Filed 08/06/12   Page 14 of 15

523(a)(6).

## CONCLUSION

Shigezo's claims against Mr. Yamada are dischargeable in bankruptcy. All claims in this adversary proceeding, except for the claims stated in Shigezo's supplemental complaint, shall be remanded. Counsel for Mr. Yamada shall submit an appropriate final judgment.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 08/03/2012